**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

AISHIA N. FORD,

      Plaintiff,

v.           CIVIL ACTION NO.   2:15-cv-05088

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Aishia Nicole Ford's Complaint seeking review of the final decision of the Commissioner of Social Security ("Commissioner").   (ECF No. 2.)   By standing order filed in this case on April 27, 2015, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and recommendations for disposition (the "PF&R").   (ECF No. 4.)   On July 1, 2016, the Magistrate Judge entered his PF&R, which recommends that this Court grant Plaintiff's request for judgment on the pleadings, (ECF No. 10), deny the Commissioner's request for judgment on the pleadings, (ECF No. 11), remand this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and dismiss this case.   (ECF No. 12.)   The Commissioner filed timely objections to the PF&R on July 7, 2016 (the "Objections"), (ECF No. 13), to which Plaintiff has responded, (ECF No. 14).

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF No. 13), **ADOPTS** the PF&R to the extent consistent with this Memorandum Opinion and Order, (ECF

No. 12), **GRANTS** Plaintiff's request for judgment on the pleadings, (ECF No. 10), **DENIES** the Commissioner's request for judgment on the pleadings, (ECF No. 11), **REMANDS** for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISSES** this action.

## I.     PROCEDURAL BACKGROUND

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length.   In short, Plaintiff filed an application for disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI, on January 18, 2012.   She alleged disability as of January 1, 2008, (ECF No. 9-6 at 3, 7), due to neck pains, back injury, memory loss, brain tumor, depression, bipolar disorder, anxiety, muscle spasms, and bunions.     The application was denied initially on April 11, 2012, (ECF No. 9-4 at 2–9), and upon reconsideration on July 18, 2012, (*id.* at 15–18).

A hearing was held before Administrative Law Judge William R. Paxton (the "ALJ") on December 26, 2013. (ECF No. 9-2 at 31–72.)   On January 16, 2014, the ALJ issued an unfavorable decision.   (*Id.* at 10–26.)   The ALJ engaged in two separate "sequential evaluation" analyses, the first addressing Plaintiff's entitlement to DIB and the second addressing her SSI claim.   As to the SSI claim, the ALJ found at step one of the "sequential evaluation" process that Plaintiff has not engaged in substantial gainful activity since January 1, 2008.[1]   (*Id.* at 17.)   At step two, the ALJ found that as of January 18, 2012, the filing date of the SSI application, Plaintiff had several severe impairments, specifically: cyclothymic disorder, depressive disorder NOS, anxiety disorder, degenerative disc disease of the lumbar spine, lumbar disc space narrowing, chronic left L5 radiculopathy, right wrist tenosynovitis, migraine headaches, and hallux valgus deformity of the

---

[1] Because the errors identified in the PF&R relate only to the ALJ's evaluation of the SSI claim, the Court will not review the ALJ's specific findings on Plaintiff's application for DIB.

right foot.[2] (*Id.* at 17.)   At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   (*Id.* at 18.)   The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), but reduced by certain exertional limitations.   (*Id.* at 20–24.) Finally, at steps four and five, the ALJ found that although Plaintiff has no past relevant work, she is capable of performing jobs that exist in significant numbers in the national economy.   (*Id.* at 24.)

The Appeals Council denied review of the ALJ's decision on March 2, 2015.   (ECF No. 9-2 at 2.)   Thereafter, on April 23, 2015, Plaintiff filed the Complaint in this Court.

## II.     STANDARD OF REVIEW

### A.     Review of the PF&R

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.     Review of the ALJ's Findings and Decision

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was

---

[2] As SSI benefits are prospective only, an SSI applicant may receive benefits no earlier than the month following the month of application.   20 C.F.R. § 416. 335.

applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence.  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision.  *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).  "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4).  The claimant bears the burden of proof

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

Under the process the ALJ must determine in sequence: (1) whether the claimant is

at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).   If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III.   DISCUSSION

The matter presented for review by way of the Objections concerns the ALJ's RFC analysis of Plaintiff's right wrist impairment.   The Magistrate Judge concluded that the ALJ did not resolve all inconsistencies in the record with regard to Plaintiff's wrist pain and did not provide a function-by-function analysis of the manner in which her wrist pain would limit her ability to work.   (ECF No. 12 at 17 (citing SSR 96-8p).)   Thus, the Magistrate Judge recommended a finding that the ALJ's RFC assessment is not supported by substantial evidence.   The Commissioner objects, claiming that the ALJ adequately considered the medical evidence and is not required to describe the function-by-function analysis in the decision so long as the reasoning is supported by the record evidence.

Before considering the record evidence and the ALJ's analysis thereof, the Court sets forth the law applicable to the Commissioner's Objections.   Between the third and fourth steps of the

---

currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

sequential evaluation process, the ALJ determines a claimant's RFC, defined as "'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)).   The ALJ must "consider all [the claimant's] medically determinable impairments of which [the ALJ is] aware, including   . . . medically determinable impairments that are not 'severe.'"   § 416.945(a)(2).   Under Social Security Ruling 96-8p, "the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions [set forth in the regulations]."   *See* 20 C.F.R. §§ 404.1545(b), (c), (d) (requiring the ALJ to assess the claimant's physical abilities, mental abilities, and other abilities affected by medically determinable impairments in determining RFC). The RFC determination must be based upon "all the relevant evidence" in the claimant's record. 20 C.F.R. § 404.1545(a).

　　"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling."   *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).   Social Security Ruling 96-8p explains that the RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"   *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8p).   This should include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."   *Radford*, 734 F.3d at 295 (citing *Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989)).   The ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Here, the Court notes at the outset that the ALJ did not perform an explicit function-by-function analysis of Plaintiff's limitations.   Rather, as seems to be a recurrent practice, the ALJ merely stated the ultimate RFC finding in a heading and proceeded to discuss the medical record without ever tying the discussion back to the limitations ascribed to Plaintiff in the RFC finding. (ECF No. 9-2 at 20.)   This practice does not comply with SSR 96-8p and should be discouraged. Still, failure to complete a function-by-function analysis is not alone enough to require remand. *Mascio*, 780 F.3d at 636 (declining to adopt a per se rule requiring remand when the ALJ fails to perform an explicit function-by-function analysis).   Nonetheless, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (internal quotation marks omitted)).   The Court turns to the ALJ's discussion of the medical evidence to determine whether that evidence, "as discussed by the ALJ, provides a sufficient basis to meaningfully review the ALJ's RFC conclusions, and, ultimately, deduce whether his RFC determination is supported by substantial evidence in the record."  *Ashcraft v. Colvin*, No. 3:13-CV-00417-RLV-DCK, 2015 WL 9304561, at *7 (W.D.N.C. Dec. 21, 2015).

Plaintiff testified at the hearing that she regularly receives injections in her right wrist to relieve the pain associated with her tenosynovitis.   Plaintiff stated that the injections are successful for approximately eight months if she does not overuse her wrist.   (ECF No. 9-2 at 46.) She lifts with the wrist cautiously, and uses her left hand as a support when doing so, as her doctor told her that the injection will wear off more quickly with frequent use of the wrist.  (*Id.* at 46–48.)   Plaintiff testified that she even uses two hands to lift a gallon of milk.  (*Id.* at 48.)   Lifting

for an extended period of time "would cause [her] to be in a lot of pain and be down for a couple days."  (*Id.* at 40.)

The record reveals that Plaintiff reported to the emergency room twice with reports of pain in her right wrist.  She was first diagnosed with De Quervain's tenosynovitis on February 18, 2011 during one of those visits.  All told, Plaintiff submitted five separate medical records in support of her right wrist impairment.  Of those records, the ALJ referenced just two in his decision.   The ALJ discussion of those records was limited to the following: "On February 11, 2013, . . . the claimant noted [during an office visit with Dr. Alexander Minard] that the recent injection Dr. Lindsay gave her in the wrist had improved it."  (ECF No. 9-2 at 22.)   The ALJ also observed that "Kelly E. Lindsay, M.D. noted on June 19, 2013, that the claimant had tenderness along the radial aspect of the wrist.   Dr. Linsday [sic] stated she gave the claimant a De Quervain's tenosynovitis injection."  (*Id.*; *see* ECF No. 9-13 at 2.)  Missing from the ALJ's analysis is any reference to records from February 18, 2011, when Plaintiff was diagnosed in the emergency room with repetitive strain injuries of the wrist and had her wrist placed in a splint; from August 29, 2012, when Plaintiff presented with right wrist pain, reported difficulty lifting, had decreased grip strength with thumb opposition, and received a wrist injection; and from June 8, 2013, when, again in the emergency room, Plaintiff reported severe right wrist pain, was observed to have swelling and tenderness, and was placed on steroids and given a splint.  (*See* ECF Nos. 9-8 at 43, 9-11 at 7, 9-18 at 3, 6.)

The ALJ found that Plaintiff was capable of performing light work, defined in the regulations, in pertinent part, as follows:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little,

8

> a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567.   Light jobs also require "use of arms and hands to grasp and to hold and turn objects."   SSR 83-10.   In overlooking the majority of the medical evidence on the subject of Plaintiff's wrist impairment, however, the ALJ failed to address—and, in turn, base the RFC finding on—relevant medical evidence that could have supported additional lifting and manipulative limitations.   20 C.F.R. § 404.1545(a).

The Commissioner points out that the ALJ specifically stated that in evaluating Plaintiff's RFC, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence."   (ECF No. 9-2 at 20.) Absent contrary evidence, the Court will normally take the ALJ at his word that the entire record was considered.   *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).   However, the Court cannot engage in meaningful review without an explanation of "the weight attributed to all material evidence."   *Scott ex rel. Scott v. Barnhart*, 332 F. Supp.2d 869, 879 (D. Md. 2004) (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).   Because the ALJ did not provide a full discussion of the medical evidence concerning Plaintiff's wrist, the Court is left to guess how the ALJ arrived at his conclusions on Plaintiff's ability to perform relevant functions, specifically, to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."   20 C.F.R. § 404.1567.   Remand is required for the ALJ to explain how Plaintiff's tenosynovitis would affect her ability to perform these tasks at the workplace.[4]

---

[4] It is beyond dispute that Plaintiff's wrist impairment could significantly limit her ability to perform jobs existing in sufficient numbers in the national economy.   In fact, the vocational expert testified that

9

Equally problematic is the ALJ's failure to "build an accurate and logical bridge from the evidence" to his decision to discredit Plaintiff's complaints of wrist pain.  *Monroe*, 826 F.3d at 189.  To evaluate a claimant's pain limitations, the ALJ must follow a two-step process.  *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  "First, there must be objective medical evidence showing the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (citing 20 C.F.R. § 416.929(a)).  If the ALJ finds evidence of such a medical impairment, he or she must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [the claimant's] ability to work."  20 C.F.R. § 416.929(c)(1).  The alleged functional limitations from pain should then be "compared . . . to the other evidence in the record."  *Mascio*, 780 F.3d at 639.  "[O]nce objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain."  *Craig*, 76 F.3d at 593 (citing *Jenkins v. Sullivan*, 906 F.2d 107, 109 (4th Cir. 1990)).

Here, the ALJ found that Plaintiff's right wrist tenosynovitis could reasonably be expected to cause the alleged symptoms.  (ECF No. 9-2 at 21.)  At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (*Id.*)  The ALJ then proceeded to discuss limited portions of the medical evidence of record, as explained above.  The ALJ did not adequately discuss how this evidence related to Plaintiff's claimed

---

Plaintiff's inability to repetitively use her dominant right hand would eliminate all the jobs identified in response to the ALJ's hypothetical, save one.  (ECF No. 9-2 at 71.)

limitations.  Furthermore, though he noted that the wrist injections relieve Plaintiff's pain for as long as eight months, the ALJ never explained his reason for discrediting Plaintiff's testimony that the effectiveness of those injections depended upon avoiding overuse of the wrist.  His failure in this regard frustrates meaningful review. Accordingly, the Court must remand to the ALJ for more specific explanation of the credibility determination.[5]  On remand, the ALJ should explain why he did not find Plaintiff credible, supporting his determination with specific facts from the medical record.

Because the Court finds that the ALJ's RFC determination was not supported by substantial evidence, it does not reach Plaintiff's arguments with respect to the insufficiency of the ALJ's hypothetical question to the vocational expert and the ALJ's failure to account for the moderate limitations in Plaintiff's concentration, persistence, or pace.  The ALJ should consider these arguments on remand.

## IV.    CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the Objections, (ECF No. 13), **ADOPTS** the PF&R, (ECF No. 12), **GRANTS** Plaintiff's request for judgment on the pleadings, (ECF No. 10), **DENIES** the Commissioner's request for judgment on the pleadings, (ECF No. 11),

---

[5] The Court notes that in March 2016, the Social Security Administration issued Social Security Ruling 16–3P, a new policy guidance regarding how the SSA evaluates "statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims."  Soc. Sec. Admin., SSR 16–3P, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016).  SSR 16–3P "supersedes SSR 96–7p," the guidance on this topic that had been in place since 1996, and "eliminate[es] the use of the term 'credibility' from [the SSA's] sub-regulatory policy, as [its] regulations do not use this term."  SSR 16–3P, 2016 WL 119029, at *1.  In so doing, the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character."  *Id*.  SSR16-3p is effective only to decisions issued after its effective date of March 28, 2016.  81 Fed. Red. 15776-01, 2016 WL 1131509.

**REMANDS** for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and

**DISMISSES** this action.

       **IT IS SO ORDERED.**

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

               ENTER:      September 21, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE